# Montgomery Traction Co. *v.* Knabe.

*Damages for Injuries to a Passenger.*

(Decided Nov. 24th, 1908. Rehearing denied Jan. 24th, 1909.
48 South. 501.)

1. *Statutes; Construction; "Until."*—The words "Until a certain named Saturday," as used in the act creating the Montgomery City Court, has the effect to include the Saturday named, so as to make it a part of the term of the court. (Overruling Johnson v. The State, 141 Ala. 7.)

2. *Bills of Exception; Time of Signing; Court Rules.*—Rule 30 Supreme Court applies to bills of exceptions signed under agreement of counsel extending the time, and not to bills signed under an order of the court extending the time for signing.

3. *Same; Extension of Time; Authority.*—Section 10 of the Act of Feb. 7th, 1901 (Acts 1900-01, p. 830) authorizes an extention of time for the signing of bills of exceptions by agreement of counsel, or the parties, or by order of the presiding judge; but does not authorize the court to order an extention of time.

4. *Same; On Motion for New Trial.*—A bill of exceptions from the City Court of Montgomery, signed within thirty days from the court's action on a motion for a new trial, is signed in time to present for review the action of the court on the motion for a new trial, although it does not present for revieiw the matters arising on the originai trial, unless signed in accordance with the rules of practice and statutory provisions of the act creating the court.

5. *New Trial; Impeaching Verdict; Testimony of Juror.*—The declarations of a juror who served upon a civil case, which involve no question of fraud, corruption or misconduct, made after the rendition of the verdict, and after the juror had left the court room, cannot be used to impeach the verdict on a motion for new trial.

6. *Same; Grounds; Misconduct of Juror; Evidence.*—Where no effort was made to show that the incident was in any manner connected with any improper conduct on the part of the jurors, or of the persons with whom they talked, or that the conversation or laughter indulged in was even related to or grew out of the case tried, the fact that after the rendition of the verdict three of the jurors trying the case went into the store of the sons of the plaintiff, and shook hands with them, and with one of plaintiff's attorneys, and laughed and talked with them, is inadmissible as evidenec to impeach the verdict.

7. *Same; Verdict; Reduction of Damages.*—Where, on motion to set aside the verdict and grant a new trial, plaintiff offered to reduce the amount recovered, the trial court may make the offered reduction, if of the opinion that plaintiff was entitled to recover, but that the jury's verdict was excessive, and enter judgment according to the reduction.

[Montgomery Traction Co. v. Knabe.]

8. *Damages; Excessiveness; Personal Injury.*—Where the person injured was a healthy, active woman of seventy-five years, able to walk down town and return, attend to her flowers, and do other things of like kind, and the injury received caused her great suffering, confinement in an infirmary for six weeks and necessitated the amputation of her foot ,which prevented her from going about, .except in a rolling chair, requiring for her a great deal of attention and care, a verdict for ten thousand dollars is not excessive.

9. *Appeal and Error; Review; Verdict; Excessive Damages.*—The courts should exercise with great caution and discretion the authority vested in them to disturb verdicts of juries on the grounds of excessiveness.

10. *Appeal and Error; Review; Evidence.*—Unless the preponderance of the evidence against the verdict is so decided as to convince the court that it is wrong and unjust, this court will not disturb the judgment of the trial court refusing to grant a new trial for insufficiency of the evidence to support the verdict, or because the verdict is excessive, or contrary to the evidence.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Action by Matilda A. Knabe against the Montgomery Traction Company for damages for personal injury. There was judgment for plaintiff in the sum of $12,500 which, on motion for new trial, was reduced to $10,000. After the refusal of the new trial defendant appealed. Affirmed.

RUSHTON & COLEMAN, and H. F. CRENSHAW, for appellant.

HILL, HILL & WHITING, for appellee.

DENSON, J.—This cause was tried, and verdict and judgment were rendered for the plaintiff in the sum of $12,500, on the 14th day of June, 1907. The defendant entered its motion to set aside the verdict and that a new trial be granted. The record shows that this motion was heard and determined on Saturday, the 6th day of July, 1907, and that the court on that day, upon the plaintiff offering to remit so much of the judgment as was in excess of $10,000, overruled the defendant's mo-

tion, and rendered judgment against the defendant in the sum of $10,000. The record shows that it is from this latter judgment the present appeal is taken.

By an act of the General Assembly entitled, "An act to fix the time of holding the city court of Montgomery," approved December 6, 1900 (Acts 1900-01, p. 122), it is provided that the city court of Montgomery shall hold three terms in each year, commencing, respectively, the first Monday in February, the first Monday in July, and the second Monday in October. By an act of the Legislature entitled, "An act to fix the time of holding the city court of Montgomery," approved February 28, 1907, it is provided that the October term of the city court of Montgomery shall be held on the first Monday in October of each year, and shall continue until the Saturday before the second Monday in July following, and that "the July term of said court shall begin on the second Monday in July of each year and continue until the Saturday before the first Monday in October following unless sooner adjourned by an order thereof." The latter act contains no repealing clause, but it is manifestly repugnant to the act of December 6, 1900. There is absolutely no field of operation for both acts, and the conclusion inevitably follows that it was the intention of the Legislature that the act of February 28, 1907, should operate as a substitute for the act of December 6, 1900. Therefore the act of December 6, 1900, is repealed by implication.—*City Council of Montgomery v. National, etc. Ass'n,* 108 Ala. 336, 18 South. 816. The effect of the act of February 28, 1907, was to convert the city court from a court of three terms to one of two terms, with the 'October term beginning on the first Monday in October and continuing until the Saturday before the second Monday in July following, and the July term beginning on the second Monday in July. By the act

of February 28, 1907, no time is fixed for its taking effect, and it therefore became operative from the day of its approval.—4 Mayfield's Dig. 856.

From the foregoing considerations it follows that the term at which the instant cause was tried was extended until the Saturday before the second Monday in July, which was July 6, 1907. This being true, then according to the language of the statute and to previous decisions of this court that term ended, by operation of law, at 12 o'clock, Friday night, July 5, 1907. According to this construction, Saturday, the 6th, was not in term time, and consequently the session of the court held on that day was held at a time not authorized by law; and judgments and orders purporting to have been rendered and made on that day are void.—*Johnson's Case*, 141 Ala. 7, 37 South. 421, 109 Am. St. Rep. 17; *Richardson's Case*, 142 Ala. 12, 39 South. 241. If, however, by any rule of construction, it could be said that the term at which the cause was tried was not affected by the act, then that term expired by operation of law (Act Dec. 6, 1900) on the Saturday before the first Monday in July, 1907, and this would throw the entire week, including Saturday, July 6th, out of term time, because there can be no doubt that the July term, 1907, commenced by law (Act Feb. 28, 1907) on the second Monday of that month, and not earlier. So that in either view it must follow that what purports to be a judgment entered on July 6, 1907 (that appealed from), is void, and will not support an appeal. Therefore the appeal must be dismissed.—*Kidd v. Burke, supra.*

Appeal dismissed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.

## On Rehearing.

The original opinion in support of the order dismissing the appeal is based upon the construction or meaning given to the word "until" as it is used in the act which fixes the terms of the city court of Montgomery. The writer of that opinion (also the writer of this), deeming the question not an open one in this court since the promulgation of the decision in the case of *Johnson v. State,* 141 Ala. 7, 37 South. 421, 109, Am. St. Rep. 17, did not discuss it, but based the conclusion attained on that case, which, as must be conceded, is on all fours with the case at bar. The act involved in the *Johnson Case,* provided that the regular terms of the city court of Gadsden should be held as follows: "Beginning on the third Monday in January in each year, and continuing until the last Saturday in June, and the third Monday in September in each year, and continuing until the third Saturday in December."—Acts 1900-01, p. 1291. In the opinion of the court in that case it is stated that: "The well-settled rule is that the use of the word 'until' generally implies an intention to exclude the day to which it refers, unless the contrary appears from the context of the statute or instrument in which the word is used." From this premise the court, speaking through Justice Haralson, after citing and commenting on the authorities, reached the conclusion that: "There is nothing in the statute to indicate that the third Saturday in December, the day on which the trial occurred, was included within the limits of the term. Unaided by anything in the context of the statute to the contrary, we must be governed by what the Legislature said, and presume that they said what they intended to say. 'Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature

should be intended to mean what they have plainly expressed, and consequently no room is left for construction.' 'Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.' "—Cooley on Con. Lim 69, 70; *State ex rel. Robertson v. McGough,* 118 Ala. 166, 24 South. 395. The court there held that the judgment appealed from was void and would not support an appeal. I have examined all the cases cited by the appellant in support of the application for a rehearing, and find in every one of them that the contract or act construed contained some word, phrase, or sentence which gave to the word "until" as therein used an inclusive meaning.

According to my view, there is not a single word, in the statute under consideration, which can be seized upon as indicating that "until" was used in an inclusive sense. There is no difference between the act construed in the *Johnson Case* and that here in judgment. I hold to the opinion that the *Johnson Case* is sound and should be allowed to stand, and that the attack here made upon it should not be suffered to prevail. However, all of the other Justices concur in the conclusion that *Johnson Case* is unsound, and that it must be, and is hereby, overruled, and that the word "until," as used in the statute, must be taken and interpreted in an inclusive sense. From this conclusion of the majority it follows that Saturday, July 6, 1907, was a day in term time, and the judgment of the city court rendered on that day will support the appeal. This necessitates further consideration of the cause as presented by the record.

The first question to be determined is whether or not the appellant has a valid bill of exceptions, and, if so, to what extent and for what purposes it may be considered. The trial of the issues of fact, as stated in the

original opinion, was had on the 14th day of June, 1907. Section 10 of the act approved February 7, 1901 (Acts 1900-01, pp. 826, 830), prescribing rules of practice and procedure in the city court of Montgomery, provides that "all bills of exceptions relating to the trial of civil causes in said court must be signed by the presiding judge of said court within thirty days after the issue or issues of fact to which said bill of exceptions relates was tried, unless the time for signing such bill of exceptions is extended by agreement of parties or of their counsel or by order of the *Presiding judge* (italics ours), as now authorized by law, respecting the signing of bills of exceptions in the circuit court." The bill of exceptions was signed on July 27, 1907. After the 14th day of June—but during that month—the defendant made its motion for a new trial. The record shows that the motion was heard on the 6th day of July, 1907, and that it was by the court overruled, and also that an order was made by the court, and embraced in the minute entry containing the judgment overruling the motion, allowing the defendant 30 days in which to prepare and present its bill of exceptions. This order is relied upon to save the bill of exceptions.

First, it is said by the appellee that the bill cannot be considered because the judgment overruling the motion and granting 30 days within which to present the bill of exceptions was made on a day out of term time. This contention has been disposed of by the conclusion reached by the majority of the Justices (as above announced) whereby the *Johnson Case is overruled.*

It is next contended that as the extension order prolonged the time for the signing of the bill into another term of the court, and the bill was signed during the following term time, the bill was signed in violation of rule 30 of Supreme Court practice, and cannot be

considered. This contention is without merit, as it has been decided that this rule applies only to bills signed under agreement of counsel.—*Driver v. King*, 145 Ala. 585, 40 South. 315.

The next contention is that the order extending the time within which the bill of exceptions might be signed was made by the court, and not by the presiding judge, and that the statute does not give such power or authority to extend the time to the court, but to the judge only, and therefore that the order of the court cannot save the bill of exceptions as a part of the record. This contention—in so far as the bill of exceptions presents for review questions which arose on the trial of the issues of fact before the jury—has been determined by previous decisions of this court in appellee's favor; and, adhering to these decisions, we must hold that such questions cannot be reviewed on the present bill.—*Arnett v. Western Railway of Alabama* (Ala.) 39 South. 775; *Western Railway of Alabama v. Russell*, 144 Ala. 142, 39 South. 311, 113 Am. St. Rep. 24; *Montgomery Traction Co. v. Bozeman*, 152 Ala. 145, 44 South 559; *Montgomery Traction Co. v. Haygood*, 152 Ala. 142, 44 South. 560; *Central of Georgit Railway Co. v. Geopp*, 153 Ala. 108, 45 South. 65. But from a reading of the cases above cited it will be seen that the bill of exceptions, having been signed within 30 days from the time the motion for a new trial was overruled, is valid for the review of questions which arose on the hearing of the motion, and of the judgment on the motion, and we must so consider it. See cases, supra.

The court correctly ruled against the defendant's offer to prove the declaration of one of the jurors, made after the verdict was rendered and the juror had gone out on the streets. The testimony proposed involved no fraud, corruption, or misconduct. Neither did the

30—8

court err in refusing to allow defendant to make proof that soon after the trial three of the jurors were seen to enter the drug store of the sons of the plaintiff (the Messrs. Knabe), and shake hands with them and with W. W. Hill, one of plaintiff's attorneys, and to laugh and talk with them. No effort nor offer was made to show that the incident was in any way connected with improper conduct on the part of the jurors, or that of the person with whom they laughed and talked, or that the conversation or laughter even related to, or grew out of, the case. So far as the bill of exceptions shows, it was a mere incident.

The only other question presented by the motion for a new trial is that the verdict of the jury is contrary to the evidence, and excessive in amount. It was contended in the lower court by the plaintiff that the car by which she was injured stopped for the taking on of passengers, and that while it was so standing still, and while she with the aid of her son was in the act of boarding the car, or was making the attempt to get thereon, said car, without any notice to plaintiff or to others, started off, and she was thrown under the trucks. If this was the true statement of the facts, then negligence vel non was at least a question for the jury. This contention was supported by the testimony of as many as 7 witnesses, while the testimony of 18 or 19 witnesses testifying for the defendant tended to show that the car had not actually stopped, but was in motion when plaintiff attempted to board same. All the witnesses who testified that the car had not stopped stated it was running at a very slow rate of speed. But, waiving consideration of the question as to whether or not—if the car had stopped—it was negligence for a woman of plaintiff's age to board a car moving as slowly as, under the tendencies of the evidence of some of the witnesses, the

car in question was running, and, recurring to the question as to whether the car did or did not stop, we find the testimony sharply in conflict on this point, with the advantage—so far as number of witnesses is concerned—in favor of defendant, while, as to intelligence of statement and definiteness of testimony, these witnesses cannot be said to possess any advantage over those of the plaintiff, so it becomes a question of plurality of witnesses. The manner of witnesses, their demeanor on the stand, and the degree of intelligence manifested by them are matters for the consideration of the jury in determining the weight which should be accorded to testimony; and the same is true in respect to the consideration and determination of questions of fact by the court or presiding judge. The credibility of the witnesses and the weight of their testimony were passed upon in this case both by jury and court favorably to plaintiff. The presiding judge was satisfied with the verdict. Moreover, as was said in the leading case of *Cobb v. Malone,* 92 Ala. 630, 635, 9 South. 738, the refusal of the court to grant a new trial on the ground of the insufficiency of the evidence, or because the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. Here, the "utmost that can be said is that it is against the preponderance of the evidence," and this cannot avail to a reversal of the order overruling the motion.

It is unnecessary to discuss the theory of plaintiff that the defendant was negligent in respect to allowing too many persons to enter the inclosure where the cars were boarded by the passengers without a sufficient force of guards, etc.

The question of contributory negligence was likewise a question for the determination of the jury.

The court reduced the verdict from $12,500 to $10,000, overruled the motion for a new trial, and entered judgment in favor of the plaintiff for the last-named amount; plaintiff's attorney having first stated to the court that, "if the court is of opinion that the verdict is excessive, we are willing to remit $2,500." On motion to set aside a verdict on account of excessive damages, followed by the offer of the plaintiff to reduce the verdict to a certain amount, the trial court, if of opinion that the plaintiff is entitled to recover, but that the judgment is excessive, may properly make such reduction of the verdict and enter judgment accordingly. Indeed, that such power and authority inhere in the trial court seems to be fully recognized by this court in the case of *Richardson v. Birmingham Cotton Co.*, 116 Ala. 381, 22 South 478. See, also, *Western, etc., Co. v. Frith*, 105 Tenn. 167, 58 S. W. 118; 13 Cyc. 134. The testimony shows that the plaintiff was severely and permanently injured. The attending surgeon testified that her leg was mangled and crushed, and was hanging by shreds of muscle and skin, and that her condition was such as necessitated its amputation, that her injury was permanent, and that she suffered a great deal, and that she was confined in the infirmary about six weeks or two months, requiring a great deal of care and attention. The testimony further showed that, while plaintiff was 75 years old, her physical condition prior to the injury had been very good for a lady of her age; that she was active, able to walk down town and return, and to attend to her flowers; that since the injury plaintiff suffers almost constantly and is very weak; that she cannot go about otherwise than in a roller chair, being too weak to walk on crutches. We have given to this question that consideration

[Montgomery Traction Co. v. Knabe.]

which its great importance demands, and, considering the elements of damage in the case, and remembering that the authority invested in courts to disturb the verdict of a jury on the ground of excessive damages is one which should be exercised with great caution, are constrained, under the circumstances in proof, to hold that the ruling of the trial court declining to set aside the verdict after its reduction to $10,000, should not be disturbed.—8 Am. & Eng. Ency. Law, 628; *New Orleans, etc., Co. v. Hurst,* 36 Miss. 660, 74 Am. Dec. 785; *Southern Railway Co. v. Crowder,* 130 Ala. 256, 30 South. 592; *A. G. S. R. R. Co. v. Bailey,* 112 Ala. 167, 20 South. 313; *Roth v. Union Depot Co.,* 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L. R. A. 855.

All the Justices concur in the conclusion that the trial court committed no error in overruling the motion for a new trial, and in the affirmance of the judgment.

Affirmed.

The majority of the court, in overruling the *Johnson Case,* do not wish to be understood as declaring a rule with regard to the word "until" in any other connection, save as in that case and this one. We hold that in statutes fixing the terms of court until a certain day, which is the last day of the week or month, the practical interpretation which has universally been placed upon the expression in this state is that the last day named is included.